CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JAVIER RESCALVO-NAJERA, on behalf of himself and
others similarly situated,

                           Plaintiff,

                -against-

BTB EVENTS & CELEBRATIONS, INC., BETWEEN THE
BREAD II, LTD., COOKIE PANACHE BY BETWEEN THE
BREAD, LTD., RICKY I. EISEN, and SEAN MARTIN,

                         Defendants.

-------------------------------------------------------------------------X

Case No. 16-CV-7647

FLSA COLLECTIVE
ACTION and RULE
23 CLASS ACTION
COMPLAINT

**Jury Trial**
**Demanded**

Plaintiff, JAVIER RESCALVO-NAJERA ("Plaintiff"), on behalf of himself and

other similarly situated employees, by and through his undersigned attorneys, Cilenti &

Cooper, PLLC, files this Complaint against defendants BTB EVENTS &

CELEBRATIONS, INC. ("BTB EVENTS"), BETWEEN THE BREAD II, LTD.

("BETWEEN THE BREAD"), COOKIE PANACHE BY BETWEEN THE BREAD,

LTD. ("COOKIE PANACHE") (collectively, the "Corporate Defendants"), RICKY I.

EISEN, and SEAN MARTIN (collectively, the "Individual Defendants") (the Corporate

Defendants and the Individual Defendants are collectively referred to as "Defendants"),

and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), he is entitled to recover from the Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.      Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from the Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premium for each day that he worked a shift in excess of ten (10) hours, (d) tips improperly misappropriated by the Defendants, (e) service charges reported to be gratuities that were improperly withheld and/or misappropriated by the Defendants, (f) reimbursement of expenses improperly withheld from Plaintiff for the purchase and maintenance of uniforms and equipment, (g) liquidated damages and civil penalties pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (h) prejudgment and post-judgment interest, and (i) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## THE PARTIES

5.     Plaintiff is a resident of New York County, New York.

6.     Defendant, BTB EVENTS, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 145 West 55th Street, New York, New York 10019.

7.     Defendant, BETWEEN THE BREAD, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 145 West 55th Street, New York, New York 10019.

8.     Defendant, COOKIE PANACHE, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 145 West 55th Street, New York, New York 10019.

9.     Defendants own and operate a full service event planning and catering business under the "Between the Bread" brand, which includes providing corporate and private clients with full service event planning capabilities such as finding and securing venues for pre-planned events, parties and banquets; developing menus; preparing all food for the event; decorating the event space and dining tables; providing floral arrangements, providing wait and bar staff, chefs, security, greeters and models; providing entertainment including DJ's, bands, and magicians; and providing rentals for the event including tables, chairs, china, tents, stages, lighting, and electronic equipment.

10.    Defendants also provide daily *a la carte* breakfast, lunch, and dinner catering menus for door-to-door delivery that is made upon request. Upon information and belief, customers have the option of submitting their *a la carte* food order online through use of www.seamlessweb.com ("seamless web"), whereupon Defendants receive the customer's order electronically, and proceed to prepare the food order in their

custom-made kitchen, and provide delivery to the customer's residence or place of business.

11.     Defendants maintain a custom-built charcuterie kitchen at 145 West 55th Street, New York, New York, from which all of the cuisine and desserts are prepared for their events, catering, and *a la carte* deliveries.

12.     Defendants maintain their corporate offices at 244 West 54th Street, Suite 504, New York, New York 10019.

13.     Defendant RICKY I. EISEN is the President and Chief Executive Officer of each of the Corporate Defendants, and is an owner, shareholder, director, supervisor, managing agent and/or proprietor of each of the Corporate Defendants, who actively participated, and continues to actively participate in the day-to-day operations of each of the Corporate Defendants, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

14.     Defendant SEAN MARTIN is the Vice President and General Manager of each of the Corporate Defendants, and is an owner, shareholder, director, supervisor, managing agent and/or proprietor of each of the Corporate Defendants, who actively participated, and continues to actively participate in the day-to-day operations of each of the Corporate Defendants, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

15.    At all time relevant hereto, the Individual Defendants exercised and continue to exercise control over the terms and conditions of Plaintiff's employment in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, and (v) otherwise affect the quality of the employees' employment.

16.    At all times relevant hereto, each of the Corporate Defendants, either jointly or individually, were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA in that they (i) have and have had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than $500,000.

17.    At all times relevant hereto, the work performed by Plaintiff has been directly essential to the business operated by the Defendants.

18.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

19.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

20.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

21.    Defendants knowingly and willfully misappropriated and/or withheld a portion of Plaintiff's tips in direct contravention of the New York Labor Law.

22.     Defendants knowingly and willfully misappropriated and/or withheld from Plaintiff "processing surcharges" purported to be gratuities in direct contravention of the New York Labor Law.

23.     Defendants knowingly and willfully failed to pay Plaintiff wage for all hours worked in connection with pre-planned parties and banquets (collectively referred to as "Banquets") in direct contravention of the FLSA and New York Labor Law.

24.     Defendants knowingly and willfully failed to reimburse Plaintiff for money expended for the purchase and maintenance of uniforms and equipment in direct contravention of the New York Labor Law.

25.     Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

26.     At all times relevant hereto, the Defendants' primary business was and is the sale of food and drinks for consumption.

27.     The Corporate Defendants constitute a "restaurant" within the meaning of the New York Labor Law.

28.     The Individual Defendants actively participate in the day-to-day operation of each of the Corporate Defendants.  For instance, the Individual Defendants personally supervise and direct the work of the employees, instruct the employees how to perform their jobs, correct and/or reprimand employees for any errors made.

29.     The Individual Defendants jointly create and implement all crucial business policies, including decisions concerning the number of hours the employees are

6

required to work, the amount of pay that the employees are entitled to receive, and the method and manner by which the employees are to be paid.

30.     In on or about 2006, the Defendants hired Plaintiff to work as a non-exempt delivery person, food preparer/kitchen helper, stock person, packer, and general "gopher" for Defendants' full service event planning and catering business.

31.     Plaintiff, like all of the Defendants' food delivery workers, is responsible for delivering food orders prepared in the Defendants' kitchen. In addition to making deliveries, the Defendants' food delivery workers, including Plaintiff, are also required to spend more than 20% of their daily work shift engaging in non-tipped activities, including, but not limited to, preparing food and assisting in the kitchen, bundling plastic ware and condiments for orders, making coffee, stocking merchandise, restocking refrigerators and freezers, picking up checks from customers, depositing checks at the bank, dropping off mail at the post office, packing items for delivery, making/preparing delivery boxes, purchasing goods and materials, and any other task asked of them.

32.     In addition to the aforementioned responsibilities, Plaintiff is often required to assist in performing non-tipped "set up" work for Banquets, including, but not limited to, setting up tables, chairs, and equipment.

33.     Defendants continue to employ Plaintiff in these capacities at the present time.

34.     Plaintiff typically works between thirty-five (35) and forty-two (42) hours per week, and occasionally in excess of forty-two (42) hours.

35.     During the busy holiday season and other busy periods, Plaintiff often work between fifty (50) and sixty (60) hours per week.

36.     Plaintiff typically works between five (5) and seven (7) days per week and, although his work shift fluctuates, he typically works eight (8) hours per day.

37.     Plaintiff occasionally works in excess of eight (8) hours per day when necessary, and in excess of ten (10) hours per day during busy periods.

38.     From the beginning of the relevant six (6) year limitations period starting in September 2010 and continuing through in or about December 2015, Plaintiff was not paid proper minimum wages or overtime compensation.  During this period, Defendants paid Plaintiff the "tip credit" minimum wage, which is less than the federal and New York State minimum wage.

39.     Thus, from the beginning of the relevant six (6) year limitations period starting in September 2010 and continuing through in or about December 2010, Plaintiff was paid at the rate of $4.90 per hour; beginning in or about January 2011 and continuing through in or about December 2015, Plaintiff was paid at the rate of $5.65 per hour.

40.     Beginning in or about January 2016 and continuing through the present time, Defendants have been and continue to pay Plaintiff at the correct New York State minimum wage rate of $9 per hour.

41.     From the beginning of the relevant six (6) year limitations period in September 2010 and continuing through in or about December 2015, the Defendants were not entitled to take any "tip credits" under federal or state law because they: (i) failed to properly provide notice to all tipped employees, including Plaintiff, that the Defendants were taking a "tip credit" in violation of the FLSA and New York Labor Law, (ii) failed to provide proper wage statements informing tipped employees, including Plaintiff, of the amount of "tip credit" taken for each payment period, (iii) caused tipped

employees, including Plaintiff, to engage in non-tipped duties, which exceeded 20% of each workday, and (iv) illegally retained portions of tips or surcharges purported to be gratuities that tipped employees, including Plaintiff, were legally entitled to receive, thereby rendering the "tip credit" invalid.

42.     Defendants failed to pay tips (including any surcharges) to Plaintiff not later than seven (7) calendar days after the end of the week in which such compensation is earned in direct contravention of the New York Labor Law.

43.     Defendants improperly and unlawfully retained a certain portion of the tips afforded to their tipped employees, including Plaintiff, for all deliveries made on orders received through seamless web by taking a certain percentage of Plaintiff's tips that exceed $10 or $20. More specifically, for tips between $11-$19, Plaintiff was only permitted to keep $10 of the tip amount, with the remainder being retained by the Defendants. For tips in excess of $20, Defendants improperly retained half of the tip amount and only permitted Plaintiff to keep the other half for himself.

44.     Defendants regularly charged customers a "processing surcharge" in connection with the delivery of traditional (non seamless) orders of 11% of the customer's bill.

45.     At the time of delivery, the Defendants' customers often inquired with Defendants' delivery personnel, including Plaintiff, whether the processing surcharge is intended to cover the delivery person's tip.

46.     Defendants instructed its delivery personnel, including Plaintiff, not to disclose whether the processing surcharge is a tip or gratuity for the delivery person, but

rather, demanded Plaintiff to simply respond to such inquiries by directing the customer to call the Defendants' office for any explanation of the surcharge.

47.     Upon information and belief, on at least 25% of all traditional food delivery orders, if not more, the Defendants' customers failed to provide a tip or gratuity for the delivery person, including Plaintiff.

48.     Upon information and belief, even when customers provided a tip in addition to the surcharge, the amount of the tip was less than what the customer would otherwise be expected to give absent the surcharge.

49.     Defendants failed to clearly notify its customers that the surcharge was not a gratuity or tip for its delivery personnel.

50.     Defendants' contracts and/or invoices with its customers failed to adequately notify its customers that the surcharge was for administration purposes, and that it was not intended to be a gratuity, or that it would not be distributed in whole or in part to its delivery personnel.

51.     Defendants' customers reasonably understood the surcharge to be a gratuity, or a charge in lieu of a gratuity.

52.     The surcharge was a gratuity or a "charge purported to be a gratuity" within the meaning of the New York Labor Law.

53.     Defendants unlawfully demanded and retained a significant portion of the 11% surcharge it collected, and failed to distribute significant portions of the service charge to its delivery personnel, including Plaintiff.

54. More specifically, of the amount added to the customer's bill as a processing surcharge, the Defendants improperly retained 55% of that amount for themselves, while Plaintiff was only permitted to retain the remaining 45%.

55. On November 22, 2013, Judge Engelmayer ruled, in a similar case against the Defendants, that the Defendants' alleged notice of the processing surcharge was inadequate to satisfy the requirements of *Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70 (2008), and held that the Defendants were liable for: (i) improperly withholding a portion of the mandatory surcharge from its delivery personnel, and (ii) tip credit violations, at least for the period from January 1, 2011 onwards.

56. Additionally, the Defendants often entirely failed to pay Plaintiff any wages for certain hours worked. For instance, Plaintiff was often required to assist in performing "set up" work for Banquets, including, but not limited to, setting up tables, chairs, and equipment.

57. Plaintiff is often required to work an additional two (2) to three (3) hours performing this "set up" work on location at the particular venue where the Banquet is taking place. Despite working these hours, Plaintiff is not compensated for this additional work time. Additionally, Plaintiff often fails to receive any tips, or received a reduced portion of the tips for the "set up" and/or food delivery work that they perform for the Banquets.

58. Further, the Defendants deduct thirty (30) minutes as a designated uncompensated meal break from Plaintiff's work time even if Plaintiff works through the break.

59. During those weeks in which Plaintiff works in excess of forty (40) hours, the Defendants fail and refuse to provide Plaintiff with overtime compensation until after he works in excess of forty-two (42) hours in direct contravention of federal and state law.

60. From the beginning of the relevant six (6) year limitations period starting in September 2010 and continuing through in or about December 2015, during those weeks in which Plaintiff worked in excess of forty-two (42) hours per week, the Defendants paid Plaintiff overtime compensation at a rate of time and one-half the "tip credit" minimum wage.

61. Notwithstanding that the Defendants were not entitled to take a "tip credit," even if the "tip credit" did apply, the Defendants still failed to pay Plaintiff the proper and correct overtime compensation rate of time and one-half the statutory minimum wage, minus the "tip credit," in contravention of federal and state law.

62. Beginning in or about January 2016 and continuing through the present time, even though the Defendants pay Plaintiff at the correct overtime rate of $13.50 per hour (time and one-half Plaintiff's regular rate of $9 per hour), Defendants still unlawfully pay Plaintiff overtime only after Plaintiff works forty-two (42) hours per week in direct contravention of federal and state law.

63. From the beginning of the relevant six (6) year limitations period starting in September 2010 and continuing through the present time, during those days in which Plaintiff's work shift exceeds ten (10) hours, the Defendants fail to pay Plaintiff a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum wage rate, in contravention of the New York Labor Law.

64.     Defendants knowingly and willfully operate their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff and other similarly situated employees.

65.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

66.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees "spread of hours" premium, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

67.     Defendants knowingly and willfully operate their business with a policy of causing Plaintiffs to pay for required uniforms and tools of their trade, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

68.     Upon information and belief, each of the Corporate Defendants are associated as a single enterprise, utilizing Plaintiff and other similarly situated employees in a fungible and interchangeable manner as workers in the businesses operated by the Defendants.

69.     Upon information and belief, the Corporate Defendants each engage in related activities, namely, providing full service event planning, catering, and *a la carte* food delivery service to the general public. The Corporate Defendants share Plaintiff and

13

other similarly situated employees, act in the interest of each other with respect to employees, pay their employees by the same policy or scheme, share control over the employees, and are under common control.

70.     Upon information and belief, the Corporate Defendants are controlled by the same owner, or owner group, operate as a unified operation and, upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, may be treated as a single enterprise.

71.     The performance of Plaintiff's job responsibilities, as well as the responsibilities of other similarly situated employees, was and continues to be controlled by one person or group of persons, corporations, or other organizational units acting together.

72.     Upon information and belief, the Corporate Defendants share a common commercial business purpose, namely, providing full service event planning, catering, and *a la carte* food delivery service to the general public.

73.     At all times relevant hereto, upon information and belief, and during the course of Plaintiff's employment, the Defendants failed to maintain accurate and sufficient time and pay records.

## COLLECTIVE ACTION ALLEGATIONS

74.     Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former non-exempt employees who have been or were employed by the Defendants since September 29, 2013 to the close of the opt-in period (the "Collective Action Period"), and who were compensated at rates less than the

statutory minimum wage and/or at rates less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

75. The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

76. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

77. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

78. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

15

Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

79.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.     Whether the Defendants employed Plaintiff and Collective Action Members within the meaning of the FLSA;

b.     Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.     What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.     Whether the Defendants failed to pay Plaintiff and the Collective Action Members statutory minimum wages;

e.     Whether Defendants provided Plaintiff and the Collective Action Members with proper notice of the "tip credit;"

f.     Whether Defendants properly paid Plaintiff and the Collective Action Members a reduced minimum wage because Plaintiff and Collective Action Members were tipped employees;

g.    Whether the Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

h.    Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

i.    Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

80.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

81.    Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

82.    Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

83.    Plaintiff brings his New York Labor Law claims on behalf of all persons who were employed by the Defendants at any time since September 29, 2010 to the entry of judgment in this case (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid minimum wages, overtime compensation, and/or "spread of hours" premium in violation of the New York Labor Law, and/or who had their tips misappropriated (the "Class").

84.     Upon information and belief, the persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, the Class consists of all non-managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

85.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

86.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

87.     Plaintiff has committed himself to pursuing this action and has retained counsel experienced in employment law and class action litigation.

88.     Plaintiff will fairly and adequately protect the interests of the NY Class members. Plaintiff understands that, as class representative, he assumes a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that he must consider the interests of the Class and Collective

Action Members just as he would represent and consider his own interests, and that he may not favor his own interests over those of the Class or Collective Action Members.

89.     Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.   Plaintiff understands that in order to provide adequate representation, he must remain informed of litigation developments and he understands that he may be called upon to testify in depositions and at trial.

90.     Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

91.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

        a.     Whether the Defendants employed Plaintiff and Class members within the meaning of the New York Labor Law;

        b.     Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Class;

        c.     What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

        d.     Whether the Defendants failed to pay Plaintiff and members of the Class statutory minimum wages;

        e.     Whether Defendants provided Plaintiff and the Collective Action Members with proper notice of the "tip credit;"

f.  Whether Defendants properly paid Plaintiff and the Collective Action Members a reduced minimum wage because Plaintiff and Collective Action Members were tipped employees;

g.  Whether Defendants improperly and unlawfully retained portions of Plaintiff's and Class members' tips (including any surcharges);

h.  Whether Defendants failed to pay Plaintiff's and the Class members' tips (including any surcharges) not later than seven (7) calendar days after the end of the week in which such compensation was earned, in direct violation of the New York Labor Law;

i.  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of the tip credit taken for each pay period and their proper overtime compensation rate, and (ii) all non-exempt employees information required to be provided on wage statements as required under the New York Labor Law;

j.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

k.  Whether the Defendants failed to pay Plaintiff and members of the Class overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

l.      Whether Defendants failed to pay Plaintiff and members of the Class "spread of hours" premium when their workday exceeded ten (10) hours; and

m.      Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

92.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "91" of this Complaint as if fully set forth herein.

93.     At all times relevant hereto, upon information and belief, the Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

94.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

95.     Upon information and belief, at least within the three (3) most recent years relevant hereto, the Corporate Defendants separately had gross revenues in excess of $500,000.

96.     Upon information and belief, at least within the three (3) most recent years relevant hereto, the Corporate Defendants jointly had gross revenues in excess of $500,000.

97.     Plaintiff and the Collective Action Members worked hours for which they were not paid the statutory minimum wage.

98.     Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Collective Action Members for hours worked.

99.     Defendants willfully failed to pay Plaintiff and the Collective Action Members minimum wages in the lawful amount for hours worked.

100.     Defendants were not entitled to a "tip credit," which would allow Defendants to pay Plaintiff and the Collective Action Members at a reduced minimum wage because they: (i) failed to provide proper notice to all tipped employees that Defendants were taking a "tip credit," and (ii) illegally retained a portion of the tips (including surcharges), thereby rending the "tip credit" invalid in respect of all tipped employees.

101.     Plaintiff and the Collective Action Members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

102.     Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

103.    Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

104.    Defendants failed to pay Plaintiff and the Collective Action Members any wages and tips for some hours worked while performing "set-up" and delivery functions for pre-planned Banquets.

105.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiff and the Collective Action Members.

106.    The FLSA prohibits employers from requiring minimum wage employees to purchase the tools of their trade or give any money back to his or her employer. 29 U.S.C. §§ 201 et seq.; 29 C.F.R. § 531.35.

107.    Defendants required its delivery personal, including Plaintiff and the Collective Action Members, to purchase, maintain, and launder uniforms at their own expense. Plaintiff and the Collective Action Members were also required to purchase, maintain, and repair their own hand trucks in order to make deliveries at their own expense. Defendants did not reimburse Plaintiff or the Collective Action Members for these expenses in violation of the FLSA.

108.   As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

109.   As a direct and proximate result of the Defendants' violations of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

110.   Due to the intentional, willful and unlawful acts of the Defendants, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

111.   Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

112.   Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "111" of this Complaint as if fully set forth herein.

113.   At all times relevant hereto, the Defendants employed Plaintiff and members of the Class within the meaning of New York Labor Law §§ 2 and 651.

114.   Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

24

115.    Defendants were not entitled to a "tip credit," which would allow the Defendants pay Plaintiff and Class members at a reduced minimum wage because they: (i) failed to provide proper notice to all tipped employees that the Defendants were taking a "tip credit" in violation of the New York Labor Law, (ii) failed to provide proper wage statements informing tipped employees of the amount of the tip credit taken for each pay period in violation of the New York Labor Law, (iii) causing tipped employees to engage in non-tipped duties that exceeded 20% of each workday in violation of the New York Labor Law, and (iv) illegally retained a portion of Plaintiff's and the Class members' tips (including any surcharges), thereby rending the "tip credit" invalid in respect of all tipped employees.

116.    Plaintiff and Class members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of forty (40) per workweek.

117.    Defendants failed to pay Plaintiff and Class members overtime compensation in the lawful amount for all hours worked in excess of forty (40) per week in direct contravention of the New York Labor Law.

118.    Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and Class members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the New York Labor Law.

119.    Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by failing to pay "spread of hours" premium for each day they worked in excess of ten (10) hours pursuant to New York State Department of Labor Regulations §§ 137-1.7; 146-1.6.

120.   Defendants knowingly and willfully disregarded the provisions of the New York Labor Law as evidenced by: (i) their failure to compensate Plaintiff and Class members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, (ii) misappropriating tips (including any surcharges), and (iii) entirely failing to pay wages and tips for certain hours worked, when they knew or should have known such was due and that non-payment of minimum wages, overtime compensation, and tips (including any surcharges) would financially injure Plaintiff and Class members.

121.   The New York Labor Law prohibits an employer from making any deductions from wages, other than standard deductions for taxes. N.Y. Lab. Law § 193.

122.   The New York Labor Law also prohibits employers from receiving "kickbacks" from their employees. N.Y. Lab. Law § 198-b.

123.   Defendants regularly obtained kickbacks from their employees and made unlawful deductions from Plaintiff's and the Class members' wages and tips.

124.   At least since January 2011, Defendants unlawfully demanded and retained gratuities and "charges purported to be gratuities" from Plaintiff and Class members, in violation of the New York Labor Law. N.Y. Lab. Law § 196-d.

125.   Defendants required delivery personal, including Plaintiff and members of the Class, to purchase, maintain, and launder uniforms at their own expense. Plaintiff and members of the Class were also required to purchase, maintain, and repair their own hand trucks in order to make deliveries at their own expense. Defendants did not reimburse Plaintiff and members of the Class for these expenses in violation of the New York Labor Law §§ 137-1.8, 146-1.8.

126.    Defendants failed to furnish Plaintiff and members of the Class with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 137-2.2; 146-2.3.

127.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

128.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations §§ 137-2.1; 146-2.1.

129.    Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, unpaid tips (including any surcharges), reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al.* and § 198.

130.    Plaintiff and Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff, JAVIER RESCALVO-NAJERA, on behalf of himself and all similarly situated Collective Action Members and Class members, respectfully requests that this Court grant the following relief:

(a)   An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)   An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)   An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)   An award of unpaid or misappropriated tips or charges purported to be gratuities under the New York Labor Law;

(e)   An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation under the FLSA pursuant to 29 U.S.C. § 216;

(f)   An award of liquidated damages as a result of Defendants' failure to pay minimum wages, overtime compensation, "spread of hours" premium pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(g)   An award of statutory damages and/or civil penalties pursuant to the New York State Wage Theft Prevention Act;

(h)     An award equal to the cost of purchasing and maintaining uniforms and work equipment for which Defendants failed to reimburse Plaintiff and Class members;

(i)     An award of prejudgment and post-judgment interest;

(j)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

(k)     Such other and further relief as this Court determines to be just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
        September 29, 2016

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102

By:     _____
        Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _Javier Rescalvo_, am an employee currently or formerly employed by _Between the Bread_, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_9/23_, 2016

_Javier Rescalvo_